STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@righthaven.com
J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
jchu@righthaven.com
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>JOHN THOMAS, an individual,<br><br>Defendant. | Case No.: 2:10-cv-1026<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Righthaven LLC ("Righthaven") complains as follows against John Thomas ("Mr. Thomas") on information and belief:

### NATURE OF ACTION

1. This is an action for copyright infringement pursuant to 17 U.S.C. § 501.

## PARTIES

2. Righthaven is, and has been at all times relevant to this lawsuit, a Nevada limited-liability company with its principal place of business in Nevada.

3. Righthaven is, and has been at all times relevant to this lawsuit, in good standing with the Nevada Secretary of State.

4. Mr. Thomas is, and has been at all times relevant to this lawsuit, identified by the current registrar, GoDaddy.com, Inc. ("GoDaddy"), as the registrant, administrative contact, and technical contact for the Internet domain found at <wisewagering.com> (the "Domain"), as evidenced by a printout of electronic mail sent by GoDaddy to Righthaven, attached hereto as Exhibit 1.

## JURISDICTION

5. This Court has original subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

6. Righthaven is the owner of the copyright in the literary work entitled: "Nevada books win 8 percent as handle rises" (the "Work"), attached hereto as Exhibit 2.

7. At all times relevant to this lawsuit, the Work has depicted and depicts the original source publication as the Las Vegas *Review-Journal*.

8. Mr. Thomas willfully copied, on an unauthorized basis, a substantial and significant portion of the Work from a source emanating from Nevada.

9. On or about February 10, 2010, Mr. Thomas displayed, and continues to display, an unauthorized reproduction of the Work (the "Infringement"), attached hereto as Exhibit 3, as part of the content accessible through the Domain (said content accessible through the Domain known herein as the "Website")

10. At all times relevant to this lawsuit, the Infringement has depicted and depicts the original source publication as the Las Vegas *Review-Journal*.

11. The subject matter, at least in part, of both the Work and the Infringement, is the profitability and wagering trends of Las Vegas, Nevada-based sports books.

12. At all times relevant to this lawsuit, Mr. Thomas knew that the Work was originally published in the Las Vegas *Review-Journal*.

13. At all times relevant to this lawsuit, Mr. Thomas knew that the Infringement was and is of specific interest to Las Vegas, Nevada residents.

14. Mr. Thomas purposefully directs and effectuates the unauthorized reproduction of a Righthaven-owned copyrighted work on the Website.

15. Mr. Thomas purposefully directs activities at Nevada residents, which activities have resulted in the copyright infringement alleged herein.

16. Mr. Thomas' contacts with Nevada are continuous and systematic because Mr. Thomas published and publishes, on the Website, content of specific interest to Las Vegas, Nevada residents about sports wagering and other gambling activities, and such contacts have been in existence at least in excess of one year.

17. Mr. Thomas' contacts with Nevada are continuous and systematic because Mr. Thomas published and publishes, on the Website, information about Las Vegas, Nevada-based sports books, and such contacts have been in existence at least in excess of one year.

18. Mr. Thomas' contacts with Nevada are continuous and systematic because Mr. Thomas published and publishes, on the Website, information about Las Vegas, Nevada-based casinos, and such contacts have been in existence at least in excess of one year.

19. Mr. Thomas' contacts with Nevada are continuous and systematic because Mr. Thomas posts, on the Website, advertisements for at least nine sports wagering and gambling-related entities (the "Gambling Partners") specially-oriented to Las Vegas, Nevada, and such contacts have been in existence at least in excess of one year.

20. Mr. Thomas' contacts with Nevada are continuous and systematic because the Website is sponsored by the Gambling Partners, and such contacts have been in existence at least in excess of one year.

21. Mr. Thomas' contacts with Nevada are continuous and systematic because Mr. Thomas, via the Website, engages in revenue sharing business relationships with the Gambling Partners, and such contacts have been in existence at least in excess of one year.

3

22. Mr. Thomas displayed and displays, on the Website, an embedded linking structure that demonstrates the heightened privity of relationship between Mr. Thomas and the Gambling Partners, as evidenced by a printout of the Website homepage, attached hereto as Exhibit 4.

23. DoylesRoom is one of the Gambling Partners, as evidenced by Exhibit 4.

24. DoylesRoom's gambling-related activities are specially-oriented to Las Vegas, Nevada given the clear references to Nevada-style gaming activity as set forth in Exhibit 5, attached hereto.

25. DoylesRoom's gambling-related activities are specially-oriented to Las Vegas, Nevada because DoylesRoom features a promotional contest entitled: "Vegas Experience," evidence of which is attached hereto as Exhibit 6.

26. WagerWeb is one of the Gambling Partners, as evidenced by Exhibit 4.

27. WagerWeb's sports wagering and gambling-related activities are specially-oriented to Las Vegas, Nevada given the clear references to Nevada-style gaming activity as set forth in Exhibit 7, attached hereto.

28. WagerWeb's sports wagering and gambling-related activities are specially-oriented to Las Vegas, Nevada because the WagerWeb homepage states that WagerWeb "is a fully licensed a sportsbook providing a [sic] Las Vegas style sports betting and casino games," as set forth in Exhibit 8, attached hereto.

29. Full Tilt Poker ("Full Tilt") is one of the Gambling Partners, as evidenced by Exhibit 4.

30. Full Tilt's gambling-related activities are specially-oriented to Las Vegas, Nevada given the clear references to Nevada-style gaming activity as set forth in Exhibit 9, attached hereto.

31. Full Tilt's gambling-related activities are specially-oriented to Las Vegas, Nevada because Full Tilt provides extensive news and information about Las Vegas, Nevada-based poker tournaments, evidence of which is attached hereto as Exhibit 10.

32. Diamond Sportsbook ("Diamond") is one of the Gambling Partners, as evidenced by Exhibit 4.

33. Diamond's sports wagering and gambling-related activities are specially-oriented to Las Vegas, Nevada given the clear references to Nevada-style gaming activity as set forth in Exhibit 11, attached hereto.

34. Diamond's sports wagering and gambling-related activities are specially-oriented to Las Vegas, Nevada because Diamond offers "Vegas Multi-player Blackjack," as evidenced by Exhibit 11.

35. Matchbook Betting Exchange ("Matchbook") is one of the Gambling Partners, as evidenced by Exhibit 4.

36. Matchbook's sports wagering and gambling-related activities are specially-oriented to Las Vegas, Nevada given the clear references to Nevada-style gaming activity as set forth in Exhibit 12, attached hereto.

37. BookMaker is one of the Gambling Partners, as evidenced by Exhibit 4.

38. BookMaker's sports wagering and gambling-related activities are specially-oriented to Las Vegas, Nevada given the clear references to Nevada-style gaming activity as set forth in Exhibit 13, attached hereto.

39. World Sports Exchange ("WSE") is one of the Gambling Partners, as evidenced by Exhibit 4.

40. WSE's sports wagering and gambling-related activities are specially-oriented to Las Vegas, Nevada given the clear references to Nevada-style gaming activity as set forth in Exhibit 14, attached hereto.

41. BetCRIS is one of the Gambling Partners, as evidenced by Exhibit 4.

42. BetCRIS' sports wagering and gambling-related activities are specially oriented to Las Vegas, Nevada given the clear references to Nevada-style gaming activity as set forth in Exhibit 15, attached hereto.

43. Carbon Poker is one of the Gambling Partners, as evidenced by Exhibit 4.

44. Carbon Poker's gambling-related activities are specially oriented to Las Vegas, Nevada given the clear references to Nevada-style gaming activity as set forth in Exhibit 16, attached hereto.

## VENUE

45. The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim for relief are situated in Nevada.

## FACTS

46. The Work constitutes copyrightable subject matter, pursuant to 17 U.S.C. § 102(a)(1).

47. Righthaven is the owner of the copyright in and to the Work.

48. The Work was originally published on February 10, 2010.

49. On April 30, 2010, the United States Copyright Office (the "USCO") granted Righthaven the registration to the Work, copyright registration number TX0007138807 (the "Registration") and attached hereto as Exhibit 17 is evidence of the Registration in the form of a printout of the official USCO database record depicting the occurrence of the Registration.

50. No later than February 10, 2010, Mr. Thomas displayed, and continues to display, the Infringement on the Website.

51. Mr. Thomas did not seek permission, in any manner, to reproduce, display, or otherwise exploit the Work.

52. Mr. Thomas was not granted permission, in any manner, to reproduce, display, or otherwise exploit the Work.

## CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT

53. Righthaven repeats and realleges the allegations set forth in Paragraphs 1 through 52 above.

54. Righthaven holds the exclusive right to reproduce the Work, pursuant to 17 U.S.C. § 106(1).

55. Righthaven holds the exclusive right to prepare derivative works based upon the Work, pursuant to 17 U.S.C. § 106(2).

56. Righthaven holds the exclusive right to distribute copies of the Work, pursuant to 17 U.S.C. § 106(3).

57. Righthaven holds the exclusive right to publicly display the Work, pursuant to 17 U.S.C. § 106(5).

58. Mr. Thomas reproduced the Work in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(1).

59. Mr. Thomas created an unauthorized derivative of the Work in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(2).

60. Mr. Thomas distributed, and continues to distribute, an unauthorized reproduction of the Work on the Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(3).

61. Mr. Thomas publicly displayed, and continues to publicly display, an unauthorized reproduction of the Work on the Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(5).

62. Mr. Thomas has willfully engaged in the copyright infringement of the Work.

63. Mr. Thomas' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Righthaven in an amount Righthaven cannot ascertain, leaving Righthaven with no adequate remedy at law.

64. Unless Mr. Thomas is preliminarily and permanently enjoined from further infringement of the Work, Righthaven will be irreparably harmed, and Righthaven is thus entitled to preliminary and permanent injunctive relief against further infringement by Mr. Thomas of the Work, pursuant to 17 U.S.C. § 502.

# PRAYER FOR RELIEF

Righthaven requests that this Court grant Righthaven's claim for relief herein as follows:

1. Preliminarily and permanently enjoin and restrain Mr. Thomas, and Mr. Thomas' agents, servants, employees, attorneys, parents, subsidiaries, related companies, partners, and all persons acting for, by, with, through, or under Mr. Thomas, from directly or indirectly infringing the Work by reproducing the Work, preparing derivative works based on the Work, distributing the Work to the public, and/or displaying the Work, or ordering, directing, participating in, or assisting in any such activity;

2. Direct Mr. Thomas to preserve, retain, and deliver to Righthaven in hard copies or electronic copies:

    a. All evidence and documentation relating in any way to Mr. Thomas' use of the Work, in any form, including, without limitation, all such evidence and documentation relating to the Website;

    b. All evidence and documentation relating to the names and addresses (whether electronic mail addresses or otherwise) of any person with Mr. Thomas has communicated regarding Mr. Thomas' use of the Work; and

    c. All financial evidence and documentation relating to Mr. Thomas' use of the Work;

3. Direct GoDaddy and any successor domain name registrar for the Domain to lock the Domain and transfer control of the Domain to Righthaven;

4. Award Righthaven statutory damages for the willful infringement of the Work, pursuant to 17 U.S.C. § 504(c);

5. Award Righthaven costs, disbursements, and attorneys' fees incurred by Righthaven in bringing this action, pursuant to 17 U.S.C. § 505;

6. Award Righthaven pre- and post-judgment interest in accordance with applicable law; and

7. Grant Righthaven such other relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Righthaven requests a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated this twenty-fifth day of June, 2010.

                    RIGHTHAVEN LLC

                    By: /s/ Joseph C. Chu
                    STEVEN A. GIBSON, ESQ.
                    Nevada Bar No. 6656
                    J. CHARLES COONS, ESQ.
                    Nevada Bar No. 10553
                    JOSEPH C. CHU, ESQ.
                    Nevada Bar No. 11082
                    9960 West Cheyenne Avenue, Suite 210
                    Las Vegas, Nevada 89129-7701
                    Attorneys for Plaintiff